IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL NATIONAL GOTTESMAN, INC. d/b/a LINDENMEYR MUNROE,<br><br>  Plaintiff,<br><br>  v.<br><br>J.S. PALUCH CO., INC.,<br><br>  Defendant. | No. 19-cv-06997<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Central National Gottesman, Inc., doing business as Lindenmeyr Munroe ("LM"), is a paper supplier based in New York. For many years, LM was the principal supplier of paper to Defendant J.S. Paluch Co., Inc. ("JSP"), an Illinois corporation in the business of printing church bulletins. In June 2019, LM stopped selling paper to JSP and sought to collect on outstanding invoices. Dissatisfied with JSP's response, LM subsequently filed this action seeking payment of the outstanding balance and enforcement of a security interest in JSP's accounts receivable. JSP then filed a counterclaim alleging that LM breached the parties' agreement and therefore may not enforce the security interest. Now, LM moves for summary judgment on its Amended Complaint and JSP's Amended Counterclaim. (Dkt. No. 57.) For the reasons stated below, the Court grants LM's motion with respect to Count I of the Amended Complaint and both counts of the Amended Counterclaim.

### BACKGROUND

For purposes of summary judgment, the Court views the evidence in the light most favorable to JSP as the nonmoving party and draws all reasonable inferences from the facts in

JSP's favor. *Weber v. Univs. Rsch. Ass'n., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Except where otherwise noted, the following facts are undisputed.

LM is a New York corporation with its principal place of business in Purchase, New York. (Def.'s Resp. to Pl.'s Statement of Facts ("DRPSOF") ¶ 1, Dkt. No. 62.) JSP is an Illinois corporation with its principal place of business in Franklin Park, Illinois. (*Id.* ¶ 2.) For many years, LM provided JSP with the paper that it used for its bulletin business. (Pl.'s Resp. to Def.'s Statement of Add'l Facts ("PRDSOF") ¶ 3, Dkt. No. 64.) But by 2018, JSP was experiencing financial challenges. (DRPSOF ¶ 12.) Although JSP used to pay its invoices promptly (receiving a discount for doing so), by early 2018, JSP regularly took more than 60 days to pay its invoices. (*Id.* ¶ 13.) The balance JSP owed to LM was at least $1.2 million by February 25, 2018. (*Id.* ¶ 14.)[1]

In December 2018, LM met with JSP regarding JSP's non-payment of invoices. (*Id.* ¶ 15.) LM expressed that the account balance needed to be lowered significantly, that it wanted the outstanding balance paid, and that it wanted JSP to start buying paper elsewhere. (*Id.* ¶ 16.) JSP, in turn, expressed that it wanted to keep ordering paper from LM, but that its cash flow issues would make it difficult to keep current with the invoices. (*Id.* ¶ 17.) LM responded that it would need security to continue doing business with JSP. (*Id.* ¶ 18.) In February 2019, LM communicated that it wanted a security interest of $800,000 from JSP to secure part of the outstanding balance. (*Id.* ¶ 21.) In March and April 2019, LM accepted new orders from JSP only on a "dollars-for-dollars" basis, meaning that JSP had to match the dollar amount of any new order with an equivalent or greater payment on past debt. (PRDSOF ¶ 6.)

---

[1] The parties dispute whether JSP owed LM $1.2 million or $1.5 million as of February 2018. That fact depends on whether orders that JSP had booked but LM had not fulfilled or invoiced are counted in the total. But the difference is not material for purposes of this motion.

The parties negotiated and signed a Secured Revolving Note ("Note") on May 21, 2019. (DRPSOF ¶ 23.) That day, LM filed a UCC-1 financing statement with the Illinois Secretary of State to perfect the security interest.[2] (*Id.* ¶ 24.) When the parties signed the Note, JSP owed around $1.1 million in outstanding invoices. (*Id.* ¶ 27.) The Note granted LM a security interest of $800,000 in JSP's accounts receivable.[3] (*Id.* ¶ 25.) But the Note did not bring stability to JSP and LM's business relationship. LM continued to require dollars-for-dollars payments for each new order JSP placed. (PRDSOF ¶ 19.) LM issued eleven invoices after the Note was signed, but JSP never paid any of them because JSP could not afford to do so. (DRPSOF ¶¶ 30–31.) From May 21, 2019 to June 28, 2019, JSP attempted to place nineteen orders with LM, but LM only accepted seven or eight of those orders.[4] (PRDSOF ¶¶ 26–27.) On June 21, 2019, LM stopped accepting new orders from JSP, again communicating that it required dollars-for-dollars payments for each new order. (DRPSOF ¶ 32; PRDSOF ¶ 22.) JSP never fully paid for any goods purchased after May 21, 2019 and also did not return any of the goods it received. (DRPSOF ¶ 35.)

JSP attempted to "rescind" the Note on June 28, 2019 and demanded that LM file a termination statement regarding the financing statement. (PRDSOF ¶¶ 31, 35.) LM did not do so. (*Id.* ¶ 36.) As of the filing date of LM's motion for summary judgment, JSP had failed to pay LM

---

[2] JSP objects that whether LM actually perfected the security interest is a question of law, not a statement of fact. But neither party has advanced any argument that rests on whether the instrument was successfully perfected, so whether the instrument was perfected is not a material fact. *See In re Yealick's Est.*, 387 N.E.2d 399, 400 (Ill App. Ct. 1979) ("Lack of perfection . . . relates only to priority over other creditors' interests in the collateral."). And the fact is mentioned here only for context.

[3] JSP disputes this fact, but the Court already concluded as a matter of law that the Note granted LM an $800,000 security interest in JSP's accounts receivable. (Order at 2, Dkt. No. 55.)

[4] LM disputes these facts, contending that JSP has not properly supported its assertion that it attempted to place nineteen orders during this period and that LM actually accepted eleven (not just seven or eight) of the orders JSP placed during this time. But the affidavit submitted by JSP establishes at least a factual dispute on this issue, so the Court accepts JSP's assertions for purposes of this motion. (*See* Def.'s Statement of Add'l Facts ("DSOF"), Ex. A, Pellegrino Aff. ¶ 7, Dkt. No. 62-1.)

for $1,013,476.19 of invoices provided between February 25, 2019 and July 1, 2019. (DRPSOF ¶¶ 8–10.) JSP has never objected to or disputed those invoices. (*Id.* ¶ 9.)

Other facts asserted by JSP are not material for the purposes of summary judgment. A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, JSP references various facts regarding the parties' expectations and intentions with respect to the Note, but (as discussed below) that evidence is inadmissible and therefore will not be considered. (*See* PRDSOF ¶¶ 8–10, 14–16, 20–21.) The same is true of the number of orders that JSP placed with other vendors because LM would not accept its orders; that evidence does not affect the outcome of the case because, as discussed below and as the Court previously held, LM was not obligated to process JSP's orders under the Note.[5] (*Id.* ¶ 28; *see* Order, Dkt. No. 55.)

JSP has also included legal conclusions and arguments in its Statement of Additional Facts, which are prohibited by Local Rule 56.1. *See* N.D. Ill. L.R. 56.1(d)(4); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). Thus, the Court disregards several paragraphs in which JSP summarizes the parties' legal arguments. (PRDSOF ¶¶ 32–33, 36–37.) Likewise, JSP attempts to characterize the legal effect of the Note as a material fact (*see, e.g., id.* ¶ 12), but under Illinois law the meaning of an unambiguous contract is a question of law for the Court's determination. *People ex rel. Dep't of Pub. Health v. Wiley*, 843 N.E.2d 259, 268 (Ill. 2006). So the Court gives no deference to the parties' allegations regarding the proper construction of the Note.

---

[5] JSP's evidence indicates that JSP signed the Note expecting that LM would subsequently continue to fulfill its paper orders and that LM knew that JSP had that expectation. (PRDSOF ¶¶ 14–16; Pellegrino Aff. ¶ 6; DSOF, Ex. B, Golly Dep. 61:10–22, Dkt. No. 62-2.) To be clear, the Court does not credit LM's arguments that these factual assertions are "speculative;" to the contrary, JSP's assertions are supported by testimony from the key negotiators on each side of the transaction, who had knowledge regarding the parties' intentions and expectations. Instead, this evidence is not relevant because the parol evidence rule bars its consideration.

LM previously moved to strike one of JSP's two affirmative defenses and to dismiss JSP's Counterclaim, which asserts two counts against LM. The Court granted LM's motion in part, striking JSP's affirmative defense of "failure of consideration." In doing so, the Court concluded that the Note, by its unambiguous language and as a matter of law, did not obligate LM to fulfill any quantity of paper orders from JSP. (Order at 2.) Instead, the Note granted a security interest to LM and gave JSP a 150-day payment term for each invoice. (*Id.*) Similarly, because the language of the Note establishes its unambiguous meaning, the Court held that extrinsic evidence—like statements made during negotiations or the parties' goals and intentions in the deal—is not relevant in construing the language of the Note. (*Id.* at 2–3.)

## DISCUSSION

With its present motion, LM seeks summary judgment in its favor as to the two counts asserted in its Amended Complaint: Count I (breach of contract) and Count II (account stated). It also seeks summary judgment against JSP on the two counts of JSP's Counterclaim: Count I (declaratory judgment that the Note is void and unenforceable) and Count II (declaratory judgment that the financing statement is void and unenforceable). Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Weber*, 621 F.3d at 592. The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). A genuine issue of material fact exists only if there is "sufficient evidence favoring the nonmoving party . . . to permit a jury to return a verdict for that party." *Johnson v. Manitowoc*

*County*, 635 F.3d 331, 334 (7th Cir. 2011). Illinois law governs the parties' claims in this action. (Am. Compl., Ex. A, Note ¶ 8, Dkt. No. 23.)

I. **Breach of Contract**

LM contends that JSP breached the parties' contract by failing to pay for paper that LM delivered. It seeks a judgment of $1,013,476.19, plus pre-judgment interest, and turnover of JSP's accounts receivable in an amount of $800,000.

Most of the elements of LM's claims are not disputed. To establish that JSP has breached the parties' contract, LM must demonstrate: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff." *Pepper Constr. Co. v. Palmolive Tower Condos., LLC*, 59 N.E.3d 41, 66 (Ill. App. Ct. 2016). To enforce the Note, LM must establish that "(1) the defendant executed the security agreement and promissory note; (2) the plaintiff is the holder of the note; and (3) the defendant has no viable defense." *Riley v. Argonaut Midwest Holdings, L.L.C.*, No. 06C5026, 2007 WL 2461661, at *3 (N.D. Ill. Aug. 28, 2007) (citing *Basu v. Stelle*, 603 N.E.2d 1253, 1254–56 (Ill. App. Ct. 1992)).

The plain language of the Note requires JSP to pay LM for paper orders within 120 days of the maturity date of each invoice. JSP does not dispute that it failed to pay those invoices, that the deadline for payment has passed, that JSP executed the Note, or that LM is the holder of the Note. Likewise, JSP does not dispute the unpaid balance ($1,013,476.19, before interest.) At issue is whether JSP can prove a defense or otherwise demonstrate that the Note is invalid or unenforceable.

A. Judicial Admissions

JSP contends that LM, by failing to file an answer to its Counterclaim, has admitted its factual allegations. Those allegations, JSP urges, prevent LM from prevailing on summary judgment. For example, JSP alleges that LM committed to continually fulfill JSP's orders as the true "consideration" for a security interest in JSP's accounts receivable. (Am. Countercl. ¶ 9, Dkt. No. 28.) Similarly, JSP alleges that the Note constitutes "an express representation by LM to process and fulfill paper orders placed by JSP in accordance with the terms of the Note." (*Id.* ¶ 10.)

LM maintains that it did not need to respond to JSP's factual allegations because LM instead moved for summary judgment. However, this is not the case—LM was required to answer JSP's Counterclaim within 14 days after its motion to dismiss was denied. Fed. R. Civ. P. 12(a)(4). Because LM did not respond to JSP's Counterclaim, it has admitted the truth of JSP's allegations. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) (although party may file for summary judgment without responding to factual allegations, doing so is "risky" because party's failure to respond constitutes admission). As a result, JSP may rely on LM's admissions to support its arguments in opposition to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). LM correctly notes that a motion for summary judgment can be made and ruled on before an answer is filed. *See Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 744 (N.D. Ill. 2011). However, filing a motion for summary judgment does not relieve a party from its obligation to answer a complaint or counterclaim, and LM identifies no authority to the contrary.[6]

---

[6] LM also contends that JSP may not merely rely on its Counterclaim to defeat summary judgment, but JSP relies on LM's **admissions**, not on its own allegations or denials. *Compare Liberty Lobby*, 477 U.S. at 248 (allegations or denials of pleading are, by themselves, insufficient to oppose summary judgment), *with Modrowski*, 712 F.3d at 1170 (opponent's admissions may be used to oppose summary judgment).

However, LM's judicial admissions are not nearly as significant as JSP claims. Generally, judicial admissions "have the effect of withdrawing a fact from contention." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). But only facts can be judicially admitted, not legal conclusions or statements of the law. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681 (7th Cir. 2002). And further, the Court has discretion to relieve a party of its judicial admissions. *Keller*, 1194 at 1198 n.8; *Wilda v. JLG Indus., Inc.*, 470 F. Supp. 3d 770, 792 (N.D. Ill. 2020).

Some of the "admissions" identified by JSP are actually legal conclusions and therefore are not binding on the Court. For example, JSP asserts that the actual consideration for the parties' agreement was LM's extracontractual promise to fulfill its paper orders. (Am. Countercl. ¶ 9.) But "whether there is consideration for an agreement is a question of law." *Lesnik v. Est. of Lesnik*, 403 N.E.2d 683, 687 (Ill. App. Ct. 1980). Therefore, the consideration given in exchange for the Note is a question of law for the Court to decide. And here, where LM has consistently asserted that it never promised to continually fulfill JSP's orders, let alone that such a promise was memorialized in the Note, the Court would relieve LM from any contrary "admission."

Other "admissions," even accepted as true, are not material and do not impact the present motion. For example, several of JSP's allegations concern the parties' extracontractual expectations and promises, as well as the construction of the Note itself. (*E.g.*, Am. Countercl. ¶¶ 7, 10, 15, 24.) But under Illinois law, the parol evidence rule provides that "extrinsic evidence of a prior or contemporaneous agreement is not admissible to alter the terms of an instrument that appears complete, certain and unambiguous on its face." *Commonwealth E. Mortg. Co. v. Williams*, 516 N.E.2d 515, 520 (Ill. App. Ct. 1987). As the Court has already concluded, the Note is complete, certain, and unambiguous. (Order at 2–3.) Thus, any admission made by LM regarding the expectations of the parties is irrelevant in constructing the terms of the contract.

Instead, the Court relies on the contract's language to derive the parties' intentions. *See Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990).

Thus, although LM has judicially admitted factual allegations contained in JSP's Counterclaim, those admissions are not dispositive of the parties' claims.

### B. Duty to Deal in Good Faith

JSP contends that material evidence supports its affirmative defense—that LM breached the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing "requires that a party vested with contractual discretion exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995). However, "[t]he covenant of good faith and fair dealing does not enable a guarantor to read an obligation into a contract that does not exist." *Id.* The doctrine "is a rule of construction, not a stand-alone obligation;" it is used to resolve ambiguities, not to add terms to a contract. *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006). "While this obligation exists in every contract in Illinois, it is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Resol. Tr. Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993).

JSP's basic contention here is that LM was required to fulfill its orders under the Note, and by rejecting too many of its orders, LM failed to deal in good faith. But this Court has already concluded that the Note "does not at any point commit LM to processing some, most, or all of [JSP's] paper orders." (Order at 2.) JSP accuses LM of acting unreasonably, imprudently, and inconsistently with the parties' expectations by refusing to fulfill orders, insisting on dollars-for-

9

dollars payments, calculating JSP's debt in an unreasonable manner,[7] and imposing limits on the level of exposure that it would accept. But JSP does not point to any portion of the Note that creates such obligations for LM.

The covenant of good faith and fair dealing only requires LM to act in good faith when vested with contractual discretion—that is, in carrying out an obligation specified in a contract. Although JSP could have bargained for the obligations it now attempts to impose retroactively on LM, it did not do so. Because JSP has not identified a contractual duty that LM carried out in bad faith, its defense fails.

### C. Repudiation and Rescission

JSP also argues that LM repudiated the Note by failing to perform its obligations and that JSP rescinded the Note after LM failed to perform. Repudiation "usually . . . consists of a statement that the repudiating party cannot or will not perform" and "may be by words or other conduct." *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 783 (Ill. App. Ct. 2003). Repudiation can also consist of a party's refusal to perform on a contract or "to perform only according to its own incorrect interpretation of the contract's terms." *Id.* And to rescind the contract, JSP must show "(1) substantial nonperformance or breach by the defendant" and "(2) that the parties can be restored to the status quo ***ante***." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942 (Ill. App. Ct. 2010). Repudiation and rescission are independent defenses, so JSP can survive summary judgment by demonstrating a genuine issue of material fact that would allow a factfinder to rule in its favor on either defense.

---

[7] LM calculated JSP's debt, and its corresponding "exposure," by counting the value of orders that had been delivered along with orders that had been booked but not delivered; JSP contends that booked-but-not-delivered orders should not have been so counted. (*See* DRPSOF ¶ 14; PRDSOF ¶ 29.) But because JSP has not established that LM had a duty to calculate its exposure in any particular way—under the Note or otherwise—this dispute is immaterial for purposes of the present motion.

As to both defenses, JSP contends that LM's refusal to perform, nonperformance, or breach consists of its refusal to fulfill JSP's orders. But as has been discussed, the Note did not obligate LM to deliver any quantity of paper to JSP. Instead, the Note set out the terms on which LM would sell additional paper to JSP, and those terms included a 150-day payment schedule and a security interest in JSP's accounts receivable. JSP has not offered material evidence or a plausible theory suggesting that LM's actions breached the Note in any way. Instead, JSP maintains that LM's commitment to continually fulfill paper orders was so material to the Note that JSP would not have entered the Note without it. But the Note does not reflect such an obligation, so JSP's defenses fail.

The parties disagree about whether JSP must return LM to the status quo existing just before the Note was signed to prevail on its rescission theory, and if so, what the relevant "status quo" is for purposes of rescission. But it is not necessary to resolve that question because JSP has not presented evidence of substantial nonperformance or breach by LM, as required for its rescission defense. Ultimately, without some evidence that LM breached the Note, JSP cannot proceed to trial based on its defenses and LM is entitled to summary judgment on Count I of its Amended Complaint.

## II. Account Stated and Counterclaim

The parties next dispute whether LM can prevail on its account stated claim—Count II of the Amended Complaint—based on certain invoices tendered by LM. But the Court does not resolve this question because LM's "account stated" claim is not an independent cause of action. Instead, the claim is "an alternative theory for proving the damages asserted in a breach of contract claim." *Brad Foot Gear Works, Inc. v. Delta Brands, Inc.*, 332 F. Supp. 2d 1123, 1125 (N.D. Ill. 2004). LM has already prevailed on its breach of contract claim in Count I, and

therefore it is not necessary to resolve whether LM also prevails on its alternative "account stated" theory.

Finally, LM also moves for summary judgment against JSP on the two counts of its Counterclaim. In the Counterclaim, JSP seeks declaratory judgments invalidating the Note (Count I) and the financing statement (Count II). The Declaratory Judgment Act, 28 U.S.C. § 2201, allows JSP to seek a declaratory judgment as a remedy. But "[t]he operation of the Declaratory Judgment Act is procedural only" and the Act only "enlarge[s] the range of remedies available in the federal courts." *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950). The Act was intended "to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). However, declaratory judgment is a discretionary form of relief: the Act "create[s] an opportunity, rather than a duty, to grant . . . relief to qualifying litigants." *Id.* at 378 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 280 (1995)). To demonstrate entitlement to a declaratory judgment, JSP must show that it can prevail on a substantive question of law in this case.

JSP offers several theories for why it is entitled to a declaratory judgment: that LM violated the duty of good faith and fair dealing; that LM refused to fulfill its obligations under the Note; that LM repudiated the Note; and that JSP successfully rescinded the Note. However, as discussed above, JSP has not presented material evidence that would allow a rational factfinder to rule in its favor on any of those arguments. JSP offers no other theories for why the Note or the financing statement is invalid. Thus, the Court grants LM's motion for summary judgment against JSP on both counts of the Counterclaim.

## CONCLUSION

For the reasons stated above, LM's motion for summary judgment (Dkt. No. 57) is granted in part and denied in part. Specifically, the Court grants summary judgment in favor of LM on Count I of its Amended Complaint and Counts I and II of JSP's Amended Counterclaim. Summary judgment is denied as to Count II of LM's Amended Complaint, as that count is merely duplicative of Count I of the Amended Complaint. Judgment will be entered in favor of LM in the amount of $1,013,476.19, plus pre-judgment interest at a rate of five percent (5%) per annum based on a 360-day calendar year. JSP is ordered to turn over its accounts receivable in accordance with the terms of the Note.

ENTERED:

Dated: July 12, 2021

Andrea R. Wood
United States District Judge